ESTATE OF CARL T. BARTH, Deceased, Plaintiff-Appellee, v. EDWARD R. SCHLANGEN, Defendant-Appellant.

First District (5th Division)   No. 1—92—2420

Opinion filed June 30, 1993.

William J. Flotow, of Palatine, for appellant.

Spencer H. Raymond and Douglas A. Graham, both of Jenner & Block, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Appellant, Edward R. Schlangen (Schlangen), appeals a probate court's ruling which quieted title to a piece of a property owned by the estate of Carl T. Barth (Estate).

On September 14, 1984, Carl T. Barth (Barth) and Schlangen entered into a written contract (the Agreement) for the sale and conveyance of a parcel of real estate (the Poplar property).[1] The Agreement provided:

> "(c) The balance of the purchase price, to wit: $40,000.00 to be paid in equal monthly installments of $366.67 each, commencing on the 1st day of November, 1984 and on the 1st

---

[1] Mr. Doolittle, a partner of Schlangen, was also a signatory to the Agreement. However, on or about March 24, 1989, Mr. Doolittle assigned all interest he had in the property to Schlangen.

day of each month thereafter until the purchase price is paid in full ***;

(d) The final payment of the purchase price and all accrued but unpaid interest and other charges as hereinafter provided, if not sooner paid shall be due on the 1st day of November, 1989."

The Agreement provided for payment of interest on the balance of the purchase price at the rate of 11% interest *per annum*. In addition, the "Memorandum of Agreement" provided:

"The terms of Agreement require the payment of monthly installments of interest thereon, for the period from October 1, 1984, through November 1, 1989, at which time the entire unpaid principal and interest shall be paid."

Schlangen did not make any payments to Barth. Barth died on October 31, 1988. Under its own terms, the Agreement remained in force even upon Barth's death.

On June 27, 1989, Schlangen filed a claim against the Estate seeking $35,000 for his interest in the Poplar property. According to the claim, Schlangen was entitled to the property "pursuant to Articles of Agreement for Deed and Rider, dated September 19, 1984."

On August 2, 1989, the Estate paid Schlangen $8,651 owed him for the "Bode Road fire job," a job completed by Schlangen in August 1984.

On August 24, 1989, the Estate filed an answer to Schlangen's claim. The Estate disputed the legitimacy of Schlangen's claim in light of Schlangen's failure to make any payments under the Agreement. The Estate counterclaimed for abandonment and rescission of the written contract.

Schlangen filed his answer to the Estate's counterclaim on February 15, 1990. Schlangen asserted that "all the terms and conditions of the sale" of the property were not contained in the Agreement. Schlangen asserted that "subsequent to the Articles of Agreement for Deed, the parties entered into an agreement relative to a setoff each had against the other."

On October 5, 1990, the Estate filed a motion for summary judgment on Schlangen's claim and on the Estate's counterclaims for abandonment and rescission. The Estate filed a memorandum in support of its motion for summary judgment and attached a copy of the Agreement and an excerpt from Schlangen's deposition. In his deposition Schlangen stated that he never made any payments to Barth prior to his death under the terms of the Agreement.

Schlangen filed a reply to the Estate's motion for summary judgment on November 11, 1990. Schlangen asserted that he and Barth "had agreed that *** the sum of $8,651.85 [from the 'Bode Road fire job'] would be a setoff against the sum due from the claimant [Schlangen] to the decedent pursuant to the Articles of Agreement." Schlangen contended that he and the decedent orally modified the Agreement and extended Schlangen's time for performance. Attached to Schlangen's reply was the affidavit of his son George Schlangen (George). George's affidavit stated in relevant part:

> "On at least one occasion I was present at the decedent's home during face-to-face conversations which took place between my father, Edward R. Schlangen, and the decedent, Carl T. Barth, wherein Mr. Barth expressed a desire to sell more real estate to my father, and at that time Mr. Barth also acknowledged to my father that he, Mr. Barth, owed my father approximately $8,600.00 for a certain 'Bode Road fire job.' Mr. Barth further indicated that my father therefore would not be required to make monthly payments for the Poplar Street property pursuant to certain Articles of Agreement and that they, Mr. Barth and Mr. Schlangen, would 'settle up' when the Poplar Street property was sold."

On November 29, 1990, the trial court denied the Estate's motion for summary judgment. In addition, on the court's own motion, the trial court dismissed Schlangen's claim without prejudice and granted Schlangen leave to file a complaint seeking specific performance naming all the necessary parties within 30 days. Schlangen never refiled a claim.

On January 16, 1992, the Estate moved for summary judgment based on its counterclaims. In its memorandum in support of its motion, the Estate argued that Schlangen had both abandoned and failed to perform the terms of the contract. The Estate further argued that even under the alleged oral agreement, Schlangen was only excused from making monthly interest payments until Schlangen was paid for the Bode Road project in August 1989. Thus, the Estate asserted that Schlangen was in default of this alleged agreement due to his failure to make monthly interest payments after receiving payment for the Bode Road project and because he failed to pay the $40,000 purchase price on November 1, 1989.

The trial court ordered Schlangen to respond to the motion for summary judgment by February 21, 1992, the Estate to reply on March 6 and set hearing for March 10, 1992. Mr. Schlangen did not

file a response by February 21, 1989, nor did he seek an extension to file a response. At the hearing on March 10, 1992, Schlangen presented a response. In his response, Schlangen acknowledged that he "never made any payments to Mr. Barth," but alleged that this was not the issue in the case. Schlangen asserted that in his deposition, he stated (and the Estate had acknowledged) that he did several thousand dollars worth of repairs and improvements to the property and that the Estate's claim of abandonment was simply false. Relying on the previously filed affidavit of his son, Schlangen asserted that summary judgment should be denied because the alleged oral agreement postponed all monthly payments and the parties agreed to "settle up" when the Poplar property was sold.

At the hearing on the motion for summary judgment, Schlangen argued that although he never made a tender of the $40,000, he offered to fulfill the terms of the contract to the administrator and to one of the Estate's attorneys and they said no. Schlangen further argued that the parties had orally agreed to a modification. The trial court noted that although the affidavit stated that Schlangen would not be required to make monthly payments, it did not say anything about an extension as to the final payment. The trial court further noted that what was at issue was the final payment; the fact that Barth died was no basis for postponing the payment because there was an estate open. The trial court found that George Schlangen's affidavit did not raise an issue of fact because the affidavit related to monthly payments and as such the affidavit was insufficient to overcome the Estate's motion for summary judgment on the basis that there was never tender to perform the terms of the contract. The trial court held that failure to make a tender without any evidence of an extension was sufficient to allow judgment in favor of the Estate. The trial court granted summary judgment on the Estate's counterclaims "because of the lack of tender and the lack of any affidavit demonstrating an extension of the final payment due 11/1/89."

On April 9, 1992, Schlangen filed an "Emergency Motion for Rehearing" which alleged the trial court erred in holding that tender was required on November 1, 1989. Schlangen cited *Dunham v. Dangeles* (1978), 67 Ill. App. 3d 252, 384 N.E.2d 836, in support of his contention that in Illinois no tender of performance is necessary, but rather only an expression of readiness, willingness and ability to perform is needed to constitute a tender of performance. Schlangen did not submit any factual material in support of his motion.

On June 9, 1992, the motion for rehearing was heard and denied by the probate court. This timely appeal followed.

On appeal, Schlangen raises the following issues for review: (1) whether the time for performance of a written contract for the sale of land may be extended by an oral agreement before the time fixed in the contract has expired and the obligor relies on such oral agreement; (2) whether a genuine issue of material fact exists which would prevent summary judgment; (3) whether certain transcripts indicate the trial judge was biased in favor of the Estate; and (4) whether a tender of performance is necessary when a contract calls for acts to be done by both parties at the same time.

For the following reasons, we affirm the decision of the trial court.

The purpose of summary judgment is to determine whether a triable issue of fact exists. (*Choi v. Commonwealth Edison Co.* (1991), 217 Ill. App. 3d 952, 578 N.E.2d 33.) A motion for summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) In considering whether to grant summary judgment, the court must construe the evidence strictly against the movant and liberally in favor of the opponent. *S J S Investments, Ltd. v. 450 East Partnership* (1992), 232 Ill. App. 3d 429, 597 N.E.2d 1213.

Schlangen argues that a genuine issue of material fact exists and, thus, the entry of summary judgment was improper. Schlangen contends it is clear that the affidavit of George Schlangen raises a question of fact to be resolved at trial as to whether the Agreement was orally modified by the parties. In addition, Schlangen argues that there is a question of fact as to whether he relied upon the decedent's waiver of strict compliance with the terms of the Agreement. Conversely, the Estate maintains the probate court properly granted summary judgment. The Estate argues that Schlangen failed to pay or offer to tender payment on November 1, 1989, and therefore lacks any claim to the Poplar property.

The Statute of Frauds prevents the enforcement of a contract for the sale of land or a contract creating an interest in land for longer than one year, unless the contract is in writing, and signed by the person against whom enforcement is sought. (Ill. Rev. Stat. 1989, ch. 59, par. 2; *Pasulka v. Koob* (1988), 170 Ill. App. 3d 191, 524 N.E.2d 1227.) An executory contract under the Illinois Statute

of Frauds cannot be modified orally. *Nelson v. Estes* (1987), 154 Ill. App. 3d 937, 940, 507 N.E.2d 530, 619.

In *Werner v. Timm* (1972), 4 Ill. App. 3d 573, 281 N.E.2d 395, the court held that parties to a contract involving real estate can be estopped from raising the Statute of Frauds in an attempt to bar proof of an oral modification of the written contract where detrimental reliance on the oral modification is shown by the other parties. The court noted that this was particularly true where the oral modification was induced by the individual who later seeks to assert the Statute of Frauds as a defense. In *Nelson v. Estes* (1987), 154 Ill. App. 3d 937, 507 N.E.2d 530, the court held that the party who detrimentally relied upon the waiver of strict compliance with the original written contract and upon the oral contract need not have been induced by the other party.

The Estate makes several arguments attacking the validity of the oral agreement. Without ruling on the validity of the agreement, for the following reasons we find that even if the oral agreement existed and was valid, the trial court properly granted summary judgment in favor of the Estate.

■ Schlangen points to the affidavit of his son as evidence of the existence of an oral agreement to modify the terms of the agreement. However, this affidavit does not indicate an agreement by Barth to waive either the purchase price of the Poplar property or the amount of interest due on the purchase price (the affidavit of George Schlangen, filed in response to a previous motion for summary judgment, is the only evidence Schlangen has filed in support of his position). At best this oral agreement, if it existed, showed an agreement to postpone the monthly payments due to a past debt. Notwithstanding the issue of interest payments, the Agreement required Schlangen to pay the $40,000 purchase price by November 1, 1989. Since the alleged oral agreement with the deceased does not disclose either a waiver by Barth of a tender of the purchase price required by the Agreement, or a reliance by Schlangen on that type of a provision, we find there was no genuine issue as to any material fact to preclude the entry of summary judgment.

■ Schlangen further argues that to require him to make a tender of performance when he knew the Estate was actively resisting the claim would have been a waste of time. Schlangen raises the issue of whether there should be a tender of performance when the parties are in litigation. Schlangen does not provide any authority and this court was unable to find any authority that supports Schlangen's position that the filing of a claim against the Estate in

some manner excuses or holds in abeyance his need to perform his obligations under the contract in the present case.

Schlangen cites *Dunham v. Dangeles* (1978), 67 Ill. App. 3d 252, 384 N.E.2d 836, which holds that absent an express provision to the contrary, when a contract calls for acts by both parties to be done at the same time, no tender of performance is necessary, only an expression of readiness, willingness, and ability to perform. In *Dunham* the court found that, under the facts of that case, it was clearly reasonable for the plaintiffs to tender performance by conveying notice of their readiness to perform through an intermediary who had previously served in that capacity between the parties. In the present case, the Agreement provided for payment on November 1, 1989. At the hearing on the motion, Schlangen's counsel indicated that at one time Schlangen had offered to pay the Estate. However, this was merely a statement by counsel; no affidavit was filed to this effect, and this statement did not in any way indicate an ability to perform. Schlangen admits he made no payments under the agreement, and he fails to allege any facts that he was ready, willing and able to tender payment of $40,000 on November 1, 1989. Moreover, the allegation that it would be a "waste of time" to tender performance does not equate to, or substitute for, an expression of readiness, willingness and ability to perform. We find the trial court properly granted summary judgment in favor of the Estate.

In determining whether summary judgment was correctly entered, a reviewing court is not limited to the precise reasons stated or those implied by the trial court in entering summary judgment. (*Kirnbauer v. Cook County Forest Preserve District* (1991), 215 Ill. App. 3d 1013, 1016, 576 N.E.2d 168.) Rather, in determining the propriety of the entry of summary judgment, the reviewing court will consider all grounds urged and facts revealed in the trial court and will affirm the grant of summary judgment if the decision is justified by any reason appearing in the record. *Kirnbauer*, 215 Ill. App. 3d at 1016-17.

"Abandonment of a contract may be deduced from circumstances or from conduct which clearly evidences an abandonment thereof. The acts relied upon must be positive, unequivocal and inconsistent with the existence of the contract to constitute abandonment." (*Bocchetta v. McCourt* (1983), 115 Ill. App. 3d 297, 301, 450 N.E.2d 907, 910.) Even assuming, *arguendo*, Schlangen's alleged oral agreement could be found to constitute a valid extension of the Agreement, we believe the record justifies a finding that Schlangen

abandoned said oral agreement. Thus, we find support for the grant of summary judgment on grounds other than those expressly stated by the trial judge.

Schlangen claims that due to the alleged oral agreement, he never made any payments pursuant to the written agreement. He has alleged that the money from the "Bode Road fire job" was to be used as a setoff against the sum due from him to Barth pursuant to the Agreement. We believe the fact that Schlangen sought and received the money for the Bode Road work (the alleged basis for extending the time when interest payments would be due, as well as the amount allegedly to be used as a setoff against the interest payments), coupled with his admissions that he never made any payments to Barth, supports a finding that Schlangen abandoned the alleged oral modification to the Agreement.

■■ Finally, Schlangen argues that a fair reading of the transcripts of the hearings held on March 10, 1992, and June 9, 1992, indicates the trial judge was biased in favor of the Estate. Except for a statement that the transcripts disclose "excessive interruption by the trial judge and a general hostility toward the claimant's position," Schlangen does not present any argument on this issue, nor does he cite any authority. After a careful review of the record, we find no merit to this claim.

For all the reasons set forth above, we affirm the decision of the trial court quieting title to the Poplar property.

Judgment affirmed.

GORDON, P.J., and COUSINS, J., concur.